Our last case for argument is Saddle Mountain Minerals v. City of Richland Mr. Stephens, you can come up when you're ready. Mr. Stephens, I'm representing the appellant, Saddle Mountain Minerals, and I'd like to reserve three minutes for rebuttal. Thank you. I'd like to address first the Due Process Clause claim, and our position is that Saddle Mountain Minerals v. City of Richland are considered on the property in which their mineral interests exist. And the basic due process requirement is notice and an opportunity be heard. And I think that that is true, even if Saddle Mountain doesn't have the ability to force the denial of the permit. And that is one of the city's argument, is that, well, we don't have – the city has to give the permit. And I think the best case that really shows the importance of that is the Mennonite Board of Admissions case, the tax foreclosure case where the Supreme Court said the mortgage holder has a right to be noticed before the property is foreclosed upon. Why? Because they could pay the taxes and avoid the foreclosure. And similarly here, my clients would have an opportunity perhaps to remove minerals before a shopping center is built if they had notice. But the city regularly issues these permits without notice. Could I just get a factual question? I was trying to search the record. So when were the zoning regulations that precluded extraction, when were those enacted first? So they are at different times. 2013 is – different times for different areas, I should say. And so – What was the earliest? For one section – That would relate to your client. There's probably in 1995 for one section. And these are detailed in the city's expert report of Mike Stevens. It is important to note that those early – like the 1995 restrictions said simply that mining is not allowed, but for instance, extracting sand and gravel might be. There isn't really an explanation of what would be allowed at that time. But I think it is fair to say that in 2013, when particular areas were zoned residential that mining would not be allowed at that time. And extraction as well? Yes. Yes. Right. And the property – or that you're suing over were acquired over what period? It was all acquired in 1995. Okay. And just to be clear, it was by the Mons acquired in 95. It was transferred to their LLC in 2000. And the other part of due process that I think is important is the city has argued, well, we're just authorizing somebody else to do something, and that somebody else is the problem. And our position is that it's the city's decision which is authorizing the third party to act, and that requires due process. And there are multiple U.S. Supreme Court cases that would support that. The Fuentes v. Shevin, Snydack v. Family Finance Corp., Ninth Circuit case in Stipman v. San Francisco, which is allowing a private party to impound a vehicle. The point is it doesn't matter so much who is actually doing the action. The question is who is authorizing it. In this case, there's no question that it is the city. But if the Washington state cases, like Santiago-Holmes and Joshi, say that service owners can actually develop and burden these rights, then how does that affect your notice claim? I think that our clients still are entitled to notice because they have a property interest there. So they'd have notice, but with no recourse, vis-a-vis the city. They could then, before the city actually issues the permit, maybe they could remove minerals. They could remove sand and gravel that's at the surface before that actually happens. So there is something to benefit them if they had notice. But I think it is also important to realize that in Santiago-Holmes and in Joshi, the idea that the owners are entitled to subjacent support and the owners of the surface, that is all dicta in that case, Your Honor, because nobody at that time was arguing either about notice or even arguing about whether these developers could, in fact, use these materials. The only thing at issue in that case is when they took the materials, did they need to pay for them? And the court said yes. But you could sue the individuals who get these permits, right? That is true. That is true. But I think the analysis is the same if you look at, like, Fuentes v. Shevin or Mullane versus the bank. If the bank reallocates our interests, we could always sue the bank. And the court has said, no, the government that is authorizing this activity is required to give notice. And that is what we're relying on. I would like to move quickly to our takings claim. And it is, I think it is critical in this case to realize that we, in following up on your question about when these regulations came into existence, there are cases cited in our brief that I think make very clear, like the Palazzolo case, I mean, starting with Palazzolo and subsequent cases, that the government does not simply get the ability to deprive someone of all of their use of their property unless the suit is brought before the change that there's no takings claim. And because otherwise they could just make the change and essentially let the passage of time take away these rights. We believe that there is a Lucas-style taking here. And it's because of the city's prohibition on mining, it renders that property interest, those mineral interests, practically worthless. And I realize I'm going to jump around here a little bit, but... They're not worthless because you're selling mineral rights to the surface rights owners. But not anymore. It's significantly more than you pay for them. But not anymore. I guess that's what I'm saying. Not anymore. We now know that, and everybody knows, that we cannot do any mining. Then those mineral interests become worthless. And we're here on summary judgment, an appeal from a summary judgment. And I do want to refer to the court to two parts of the record, both in volume two of the ER, page 40 and 146, there are two declarations that are saying these minerals are now valueless or worthless. And when I say jumping around, going to the district court's exclusion of our expert witness said, well, you know, you don't have any evidence of the before. That is the evidence of the before. It is worthless. It is valueless at this time. And the discussion as to how much those things would be worth if they were usable was where the 2.8 million comes. But the district court seemed to think, oh, that's the present value after the government's regulation. And I think that's a misreading of the record below. I think the other fact is that Saddle Mountain cannot extract. I mean, that, I think, is given. But the other problem is that the city gives others the ability to extract. They give the developers of the property. They can use the minerals. Yes, they're going to have to pay for them in light of Joshi and Santiago homes. But the point is, this is property that my clients own, and they cannot use them. They have been legislatively prohibited from actually using those. And they knew that when they acquired it. Well, no, not completely, because again, those earlier regulations said, well, sand and gravel is allowed. Mining is not allowed, but sand and gravel is, as if it was something other than mining. So sand and gravel extraction was allowed at the time. And as we know from numerous cases of the U.S. Supreme Court. So let's just kind of follow that through. Everything else, they knew it was a no-go, right? Right at the outset when they acquired these leases or rights. Well, unfortunately, no. And because the U.S. Supreme Court has said. They didn't read the regulations. I'm just asking what their knowledge was, not whether their knowledge necessarily meant no taking. But they knew when they bought these that everything except potentially sand and gravel. And then as time went on, that gets clarified. Well, the court has said in takings cases that you cannot just assume what the regulations say as prohibiting X, Y, and Z. You really have to get a variant. You have to request a variance. We have no idea what the jurisdiction is going to do. And that is true from numerous cases out of the U.S. Supreme Court. Egans versus Tiverland. And you requested a variance? Yes, we did request a variance. And that was denied.  And that's what's made it absolutely clear. We're not going to be able to mine. I think we also ought to be able to go to the jury on the question of a Penn Central style taking. Penn Central requires consideration of various factors, one of them the economic impact. And the record would indicate it's a $2.8 million impact over an 800-acre area. That is a real impact. And as I said earlier, that is not just the current value. That is what the value was until it was clear they could not mine. I think the distinct investment-backed expectations requirement under Penn Central is really not disputed. I mean, these were bought for one purpose only. And then you get to the kind of the amorphous part of Penn Central, which is the character of the government action. And I don't believe that is dealing with, you know, good or bad faith or anything like that, because we are not alleging bad faith. But it's just kind of the catch-all. What is the character? What is the nature? And the nature of this restriction is you can't remove minerals and other people can. And even though you own the mineral rights, you cannot remove minerals. And I think a jury ought to be able to decide that. You wanted to save three minutes for rebuttal. You're down to 2.30. Do you want to save the rest of your time? It's up to you. Yes, I will save the rest. Thank you, Your Honor. All right. Thank you. Mr. Harper. Good morning, Your Honors. May it please the Court, Ken Harper for the City of Richland. I first want to answer Judge McEwen's question regarding the record, because I think there was a little bit of, I guess, inaccuracy in counsel's comments. Specifically, Judge McEwen, you asked about what was the status of the city's zoning code at the time that the plaintiffs acquired the property. You also asked, sort of branching off from that, when did the city's zoning code prohibit what? And let me answer that with respect to the record. It's at 2 ER 310. Mr. Stephens is correct. You'll find a fairly detailed discussion of this in Mike Stephens, no relation, declaration. But the answer to the question is 1962, Your Honor, at 2 ER 310, Mr. Stephens states in his declaration, the city has regulated the excavation, processing, removal of topsoil, sand, gravel, rock, and similar natural resources as a conditional use since 1962. He goes on, Your Honor. That sounds more, comports more with my reading of the record, because 1995 seemed late in the game. But keep going. Your Honor, he goes on because, as Mr. Stephens points out, his clients own these minerals in various sections. Sure. And the city has developed over time, we've annexed certain land, and consequently the zoning code that existed in 1962, I don't want to misrepresent the record, may not have been exactly the status of the zoning code when his clients took title in 1995 or 2000, depending on which of his clients you isolate. And so what Mr. Stephens did is he followed up on that 1962 point of reference by breaking it out on a section by section basis. And the answer to your question with that in mind is 1995, with the exception of one section, and that section would have been section 27, in which instance the zoning code prohibited all mining of sand, gravel, rock, and similar natural resources dating back to 1994. So if you go through the record, Your Honors, you'll see this 1995, 1994, the operative dates. It's significant, and I'm going to jump to the takings argument, although I still want to talk about procedural due process. But it's significant because it doesn't cut off the rights to bring a claim in the way that Palazzolo does, or the way that Palazzolo discusses. But it is very much part of the reasonable investment backed expectations. The regulatory environment at the time that the Mons purchased this property prohibited zoning, prohibited mining as a matter of the zoning code. And the record on what they knew, I think was also germane to your question, Judge McEwen, is that they made no investigation of this one way or the other. Did they know that the city's zoning code prohibited mining? The testimony from Gary Mon is that he had the opportunity to buy these minerals because they were offered to him on a take it or leave it basis. It was so cheap that he couldn't turn it down. He made no investigation of the title. He made no appraisal of the minerals. And he didn't ask any governmental official, would we be allowed to do any zoning? There was no, there I go again with zoning, I apologize again. He made no inquiry of any government official if he could engage in mining. There was no active mining of any of these minerals. He didn't purchase a mining operation. He purchased essentially an inchoate set of mineral interests that really could not be utilized and it didn't concern him that they couldn't be utilized for mining. I wanted to respond to your question, Judge McEwen, because it struck me that they really went to some of the heart of the issues on takings. But I do want to backtrack now to procedural due process. That was Mr. Stevens' lead argument and I think that is truly what he's primarily argued below as well. The issue that the city takes with Mr. Stevens' procedural due process claim is that it is very loose with respect to the identification of a protected property interest. We really have a very difficult time, I think, understanding from the briefing or even from the arguments that we've heard below, what is the protected property interest? A few aspects of procedural due process are pretty clear and they cut in favor of the city, I submit. It's certainly clear that a mere diminution in value does not implicate a procedural due process right. It's also clear, and I think it almost is inherently part of the allegations of this case, that the city hasn't deprived Mr. Stevens' client of anything. The whole theory of this case has not been that the city has gone on to any property in which Saddle Mountain may have a mineral interest and exported or... I think the argument is that by granting the permit, the city is acquiescing or authorizing the use or the access to the mineral rights. And so the city can't sort of stand here and say, well, that's not really us, that's whoever purchases the surface rights, we're just granting the permit, when in fact, but for the action of the city, that that owner wouldn't have the ability. Well, I think that's absolutely right, Judges, so I think that is the argument below. And there's just nothing in procedural due process law that suggests that the city's exposure extends to protecting Mr. Stevens' clients from the actions of these third-party surface owners. Do you agree with the argument of your friend on the other side that this issue wasn't squarely decided in Joe Sheer and Santiago Homes? Squarely decided, Your Honor, I will tell you that I think Joe Sheer and Santiago are difficult to understand. I think it is clear as a matter of mineral law that Washington holds to that the surface owner has the right to use and develop the property. I don't think there's any dispute about that. I think it gets more subtle when we start talking about whether we're discussing common sand and gravel, the scope of the deed, and I grant that the deed that Mr. Stevens' clients are pointing to here is very broad, and it contains this language that suggests that they may consume the surface. But I don't think that's any different. In fact, it's literally not any different from the deed that was being interpreted by the Washington Supreme Court in Joe Sheer. And in Joe Sheer, following with Santiago Homes, the surface owner's right includes everything making use of the surface, provided that they don't export or extract minerals. And so in that sense, I think we really do have a situation very comparable to Shanks v. Dressel, where the question is, did the city somehow become liable simply because a property owner, a surface right owner, I should say, chooses to obtain a building permit for any number of actions on the surface? As you see, there's some colloquy between counsel in the written communications during the discovery process, and I inquired, does that really extend to things like water heaters and utterly benign actions on the surface, erecting a pergola, or even tearing down a barn, I think was one of the instances. And the argument is, yes, it does. And so I think what that highlights, Judge Desai, is that if there is a protected property interest, and if the city has culpably acted by granting a building permit or a rezone or a conditional use permit or any number of other kinds of development activities, then the liability exposure to the city is absolutely unlimited. And that is really very difficult to accept. But I think the answer to get out of that conundrum is to go back to, what is the protected property interest here? The protected property interest has been very much in a state of flux in Mr. Stevens' arguments below. The old property versus new property distinction has been a main theme of Saddle Mountain's arguments, and it just has no bearing on what is a protected property interest. I fully grant that a mineral right is a property interest, and I fully grant that whatever the extent of Washington State mineral law would connote, that it has that full set of  We don't know quite what sand and gravel we're talking about because there's not a clear indication of the title, but nevertheless, I don't need to debate that. A mineral interest is a protected property right. We did not take any of the protected property rights. That would be different if we had converted or exported or somehow sold. So that doesn't... I don't know if you took them or not, but at least give me notice when things are happening. You're in my outline, Judge McHugh. So can the mineral right be the protected property interest? I submit it can't because you've hit Shanks v. Dressel and the progeny of that. Can the notice be the protected property right? And the answer to that is clearly no, because you don't have a protected property right in procedure. The notice would be merely in shape... But I think there... And maybe it's a conflation of the property interest and sort of the thing that they would do because I think the argument is that had we received notice, then we could have mined it or somehow maybe engaged in an opposition campaign so the permits wouldn't have been granted or whatever, but there would have at least been an opportunity to protect the property right. And so is that, in fact, just a conflation of a procedural right and a property right? Well, that's point three. So I suggest it's not the mineral interest. I think, Judge Desai, I agree with you, or the implication of your question anyway, that notice itself cannot be the property interest. So I think the third and final way that Mr. Stevens tries to argue a protected property interest is just as you hypothesized, Judge Desai. If he's got this protected mineral interest, and we grant that he does, and if somehow he were to be entitled to notice under the code, which the code just doesn't say, but let's say he is entitled to it, what then? What that argument suggests is that he has a protected property interest in the outcome of the city's decision process. And that can't be the law either because you don't have a protected property interest when the outcome of a decision is itself subject to discretion. It's not a protected property interest because it's highly discretionary. If in fact the city gave notice to Mr. Stevens' clients that an individual wants to erect a pergola in his or her backyard, what result? Well, the answer is that there's absolutely nothing in the Richland Municipal Code. Protected property interest is derived from source of state or local law, right? There's nothing in the city's code that says we would have any standing to do anything relative to that person wanting to erect a pergola because there's a mineral interest. And again, we run right into Washington state law because the Washington Supreme Court has told us that you can use the surface as you see fit. And so I just struggle, Your Honors, to, you know, meaningfully sort of expand on and then analyze this protected property interest component because I just don't see how it can be. It also, in an indirect way, it also can be discredited, I guess, if not analytically disproved because of the very extent of it. And I'll point out that in Mr. Stevens' reply brief, I don't think you find a very clear articulation of it either. In his reply brief, he states that the Due Process Clause simply requires notice to recorded owners of a property that is subject to a permit request. And that's exactly our concern. It doesn't simply require it. We have to find it somewhere. It has to be shown in some source. But I was on the train of thought that indirectly it just seems highly implausible, and I want to highlight why. You've seen in the excerpts of record that the city actually, in discovery, sought from Mr. Stevens an answer to what permits are we talking about? Let's get to brass tacks. What are the permits that deprive your client of a protected property interest or deprive your client of the ability to access minerals, however broadly you want to define it? And he helped us identify those. We've supplied them. You'll see that they're, you know, as I've indicated, they are very benign, 3ER830, replace water heater, gas piping for a new fireplace. I'm picking and choosing, so there are others like a rezone. But the thing that I want to branch off from there, Your Honors, is that the theory falls apart not only because of the breadth of the kinds of permits that Saddle Mountain claims it has a right to notice of and to be able to influence, but it also falls apart because if Saddle Mountain's mineral rights connote this kind of a protected property interest, then nearly any other kind of property interest that could be articulated does so as well. And Mr. Stevens recognizes this. Page 16 of his reply brief, he points out that easements are recognized forms of property. They certainly are. Recorded covenants certainly are. Liens, water rights, all of those are protected property interests if you define protected property interest as anything that Washington State law recognizes as property interest. So what that leads to is a scenario where the city could have a due process violation every time it issues any kind of building permit to anyone who may have a right to apply for the permit or may have a subsurface interest of one kind or another, may be a remote lien holder, folks who may not be even perceivable in the public record. So it just does not fly with really any expected jurisprudence on procedural due process. My apologies. So I want to speak briefly with my last minute on takings. I think I've already highlighted our position on the Penn Central test. Mr. Stevens really did not touch on Loreto. I want to emphasize that in Loreto, a taking exists where there's a physical occupancy that is compelled by the government to judge the size point. In this case, at most, the city issues a permit and a person goes on the property and does whatever he or she does. It's very different from Loreto or the Loreto progeny where there's a Cedar Point Grove, I guess, versus Hasid is one, where the government actually compels the entry, directly compels the entry by a private party. Finally, on takings is Lucas. I don't want to speak much to Lucas because I think Judge Asai has already indicated that the panel is well aware that Mr. Stevens' clients have been able to sell these interests for a significant amount of money over the years. And I disagree with Mr. Stevens. The panel will make up its own mind on this, but I disagree that Mr. Maughan's statement of what the minerals are worth was anything other than his opinion of what they are worth now. That's what it clearly is indicating. Thank you very much. Thank you very much. You have about two and a half, you have two and a half minutes. Thank you. I'll try to be quick. I sat down and thought, how come we weren't talking below about 1962? And then I realized the cited page says that in 1962, the city started regulating removal of topsoil and mining as a conditional use. So it was allowed in 1962. It was just a different permitting process. Now, I assume that you could just hire a title company and with respect to all your parcels say, alert us when there's any permit or other activity related to this interest. And the title company could do that. You just want the city to do it. Well, I don't know if that's true. I don't know if a title company is keeping track of permits. In fact, I don't think it's true. Well, you could ask a title company. That's what you employ title companies for. You could say, dear title company, I'm going to employ you. Alert me to every time there is a filing on this property. So Your Honor, I respectfully disagree. I don't think a title insurance company is going to keep track of permit decisions at the city. They will let you know if somebody files a lien or let you know those kinds of things, but not permit decisions. Okay. What about a standing records request to the city every time there is an application for a permit with respect to one of the parcels? That probably exists and works, but the ultimate question here is whether due process requires that. And just because there's another way to get the process doesn't mean that there is not a due process problem here. Can you address, I think, the argument that the city is making that, and maybe, you know, I use the word conflate, but I think the argument that the city is making is that there is no way that notice can be a property interest because it's a procedural interest. I agree 100%. We're not saying the property interest is in any city code or any requirement of notice. The property interest is in the deed that says you own these minerals and you have the right to control this property. The notice requirement is a due process requirement, and it's true with every other kind of due process case the Supreme Court has handled. People have property interests in property, in cars, in bank accounts, in liens. We're not saying it comes. We never have said it comes from the city code. Why don't you just take a moment and finish up, and either of my colleagues have a question. Thank you, Your Honor. There was also, just maybe bring up two things quickly. One, there was a comment made that notice should not be given to people not seen in the public record. Our point is these are in the public record. These are recorded. The city can know whether we have mineral interests, and they had argued below that, and in the briefing, that title insurance companies won't give the city that information. That is not true. They don't insure against mineral interests unless somebody asks them to insure, but these are in the public record, the grantor grantee index that's been around forever. They are available. And then the other brief response on Loretto is Loretto did not command the cable company to put the cable in the apartments. They authorized it, and that's what we're saying here. The city has authorized decisions that create a physical invasion of my client's interest, and with that, we'd ask the court to reverse. Thank you very much. We thank both counsel for their arguments this morning, and this matter is submitted. We are in recess until tomorrow. Thank you.
judges: McKEOWN, THOMAS, DESAI